CHARLES CAUSTE, complainant,

*v.*

BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX New Jersey, and A. C. WINDSOR, INCORPORATED, a corporation of New Jersey, defendants.

[Decided December 19th, 1930.]

Mr. *William V. Azzoli,* for the complainant.

Messrs. *Sandmeyer & Meisner,* for the defendants.

BACKES, V. C.

The defendant A. C. Windsor, Incorporated, had the general contract for the erection of the Isolation Hospital in Belleville. The complainant contracted with the defendant to install the sewer and drain pipes. The price was definite; the *quantum* of work was indefinite, but included all coming within the general description of sewers and drains. The complainant performed his contract. His performance required changes to conform to the performance of the general contract, and unforseen additional work was required. All extras were ordered by the defendants' agents in charge of the defendants' contract with the board of freeholders. Not having been paid, the complainant filed his bill to enforce his lien upon the funds in the hands of the county, notice whereof had been served pursuant to the provisions of the Municipal Mechanics' Lien act. A reference was made to a special master to state the account, made up of eighty-two items. The master found that there was actually due the complainant $9,308.59, but, his lien claims being for $8,445.36 only, he allowed the latter sums; and after deducting stop-notices filed by creditors the master reported the net amount to be $4,369.19. The defendants filed more than fifty exceptions; the major portion attacking items in the account. The defendants offered no testimony at the hearing before the master; their counsel contenting himself with a cross-examination of the complainant and his witnesses although, it would appear, the officials of his client are as conversant as the complainant with the work for which he seeks a recovery. On the argument of the exception, counsel relied on the weakness of the complainant's proof. It was, of course, his privilege to refuse information, but he ought not complain if the master's findings do not accord with facts he may have withheld. The master labored anxiously and with painstaking care to arrive at a just verdict, as his report indicates, and after carefully reading the testimony the court is unable to see how he could have reached a different conclusion.

That the complainant performed his contract, letter perfect, is not disputed. The objections are to charges for extra

4

work. The extras were mainly for additional depth of trenches. They were not ordered in writing. That is one of the points. The contract provides that there should be no allowances for extras unless authorized in writing. All extras were verbally ordered by the defendants' two superintendents on the job, Riker and Roth, as the job progressed, to enable the complainant to do his work in accordance with the requirements of the defendants' general contract with the county. The authority of the superintendents to order the extras was not only inherent in their positions, but it was also recognized and confirmed by the payment of the complainant's invoices, in the early stages, for work on the contract price and for the extras ordered by the superintendents.

Exceptions taken to the items for extras rest on the alleged insufficiency of proof of the extra work and of the charges. The complainant's father was in charge of the work. He kept a record in a handbook and the entries were transferred daily into a book kept by the complainant. Both books were in evidence and the items of the contract and of the extra work were verified by father or son or both, and the actual doing of the extra work was testified to in most instances. Monthly statements were rendered the defendant in the early periods and when adjusted and approved, as to items and charge, were paid. The charges for extras conform, in the main, to the contract price for similar work. There was ample testimony warranting the master's findings.

The exceptions are overruled.